IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
                        Plaintiffs, )    Case No.  08 C 2516
      v. )
                                        )    Judge GOTTSCHALL
JDR SEWER AND WATER CONSTRUCTION,)
LLC, an involuntarily dissolved Illinois limited )
liability company - member managed, and )
DOMINIC M. GIANNINI, JR., individually, )
and ANNITA L. CAPUTO, individually, )
                      Defendants. )

## MOTION FOR DEFAULT JUDGMENT IN SUM CERTAIN

NOW COME Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of

the Health and Welfare Department of the Construction and General Laborers' District

Council of Chicago and Vicinity (collectively referred to hereinafter as the "Funds") and

James S. Jorgensen ("Jorgensen"), by and through their attorney, Jerrod Olszewski, and

hereby move for Default Judgment in Sum Certain against Defendants JDR Sewer and

Water Construction, LLC, an involuntarily dissolved Illinois limited liability company –

member managed, (hereinafter "JDR"), and Dominic M. Giannini Jr., individually,

(hereinafter "Giannini"), and Annita L. Caputo, individually (hereinafter "Caputo"). In

support of this Motion, Plaintiffs state as follows:

      1.      The Complaint was filed on May 2, 2008 and sought to compel payment

of benefits and dues delinquencies revealed by an audit of JDR, and to compel payment

on a defaulted Installment Note, (hereinafter "Note"), entered into by JDR, and

personally guaranteed by Giannini and Caputo.

2.      Complaint and Summonses were served on JDR on May 10, 2008, on Giannini on May 10, 2008, and on Caputo on May 11, 2008.  True and accurate copies of the affidavits of service are attached hereto as Exhibits A, B, and C, respectively.

3.      All Defendants have failed to answer or otherwise plead, and accordingly, are in default.

4.      As set forth in the Affidavit of James Fosco filed contemporaneously herewith and attached hereto as Exhibit D, pursuant to the Agreement, the Note, the Guaranty of Payment and Indemnification, and the Funds' respective Agreements and Declarations of Trust, the Funds are entitled to the full accelerated installment note amounts, and liquidated damages on the late amounts, and attorneys fees and costs. Exhibit D, ¶ ¶ 1 through 4.

5.      As set forth in the Affidavit of Michael Christopher filed contemporaneously herewith and attached hereto as Exhibit E, pursuant to the Agreement, and the Funds' respective Agreements and Declarations of Trust, the Funds are entitled to the delinquent amounts revealed on the audit, including liquidated damages, interest, audit costs, and attorneys fees and costs.  Exhibit E, ¶ ¶ 1 through 8.

6.      Pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1132(g)(2), Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185, the Agreement, the Note, the Guaranty of Payment and Indemnification Agreement, and the Funds' Agreements and Declarations of Trust, the Funds are entitled to judgment in the amount of $26,404.73 joint and severally against Defendants JDR, Giannini, and Caputo as

follows:

        a.    $13,500.00 in unpaid Note payments and liquidated damages for the Note dated August 26, 2004.  Exhibit D, ¶ 4.

        b.    $11,193.03 in delinquent benefits and dues contributions, liquidated damages, interest, and audit costs revealed by the audit for the time period of August 1, 2004 through August 31, 2007.  Exhibit E, ¶ ¶ 5 and 8.

        c.    As set forth in the Declaration of Jerrod Olszewski filed contemporaneously herewith and attached hereto as Exhibit F, $1,711.70 in attorneys' fees and costs expended in this matter.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in Plaintiffs' favor and against Defendants JDR Sewer and Water Construction, LLC, an involuntarily dissolved Illinois limited liability company – member managed, and Dominic M. Giannini Jr., individually, and Annita L. Caputo, individually, joint and severally, in the amount of $26,404.73 as follows:

    A.    For $13,500.00 representing unpaid Note payments and liquidated damages for the Note dated August 26, 2004;

    B.    For $11,193.03 representing delinquent benefits and dues contributions, liquidated damages, interest, and audit costs revealed by the audit for the time period of August 1, 2004 through August 31, 2007;

    C.    For $1,711.70 representing attorneys' fees and costs; and

    D.    Ordering Defendant to pay post judgment interest in all amounts due from the date of judgment until the judgment is satisfied;

June 30, 2008                                Respectfully submitted,

                                             Laborers' Pension Fund, et al.


                                             By: /s/ Jerrod Olszewski



Jerrod Olszewski
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

LABORERS' PENSION FUND; ET AL

PLAINTIFF(S)

vs.

JDR SEWER AND WATER CONSTRUCTION, LLC; ET AL

DEFENDANT(S)

COURT DATE:

Case No.
08 C 2516

SERVICE DOCUMENTS:
SUMMONS & COMPLAINT

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not party to nor interested in the above entitled action, and is competent to be a witness therein.

On **May 10, 2008**, at **4:11 PM**, I served the above described documents upon **JDR SEWER AND WATER CONSTRUCTION, LLC** as shown below:

**CORPORATE SERVICE** was made by leaving a true and correct copy of the documents with **DOMINIC M. GIAN JR. / PRESIDENT**, an officer, managing agent or authorized agent of the within named company.

Said service was effected at **725 WASHINGTON CT., ROSELLE, IL 60172.**

**DESCRIPTION:**  Gender: **M**  Race: **WHITE**  Age: **40**  Hgt: **5'7"**  Wgt: **150**  Hair: **BLACK**  Glasses: **NO**

I declare under penalties of perjury that the information contained herein is true and correct.

**Michael C Unthank, Lic #: 117-001119**
**Judicial Attorney Services, Inc.**
**2100 Manchester Rd., Ste 900**
**Wheaton, IL 60187**
**(630) 221-9007**

SUBSCRIBED AND SWORN to before me this 12th day of May, 2008

Joan C. Harenberg

OFFICIAL SEAL
JOAN C HARENBERG
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/13/09

NOTARY PUBLIC

CLIENT NAME:
**Laborers Pension and Welfare Funds***
**FILE #:**

ORIGINAL PROOF OF SERVICE



EXHIBIT
A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

LABORERS' PENSION FUND; ET AL

PLAINTIFF(S)

vs.

JDR SEWER AND WATER CONSTRUCTION, LLC; ET AL

DEFENDANT(S)

COURT DATE:

Case No.
08 C 2516

SERVICE DOCUMENTS:
SUMMONS & COMPLAINT

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not party to nor interested in the above entitled action, and is competent to be a witness therein.

On **May 10, 2008**, at **4:11 PM**, I served the above described documents upon **DOMINIC M. GIANNINI, JR.** as show below:

**PERSONAL SERVICE** was made by leaving a true and correct copy to the within named individual, **DOMINIC M. GIANNINI, JR.** .

Said service was effected at **725 WASHINGTON CT., ROSELLE, IL 60172.**

**DESCRIPTION:** Gender: **M**  Race: **WHITE**  Age: **40**  Hgt: **5'7"**  Wgt: **150**  Hair: **BLACK**  Glasses: **NO**

I declare under penalties of perjury that the information contained herein is true and correct.

Michael C Unthank, Lic #: 117-001119
**Judicial Attorney Services, Inc.**
**2100 Manchester Rd., Ste 900**
**Wheaton, IL 60187**
**(630) 221-9007**

SUBSCRIBED AND SWORN to before me this 12th day of May, 2008

Joan C. Harenberg

OFFICIAL SEAL
JOAN C HARENBERG
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/13/09

NOTARY PUBLIC

CLIENT NAME:
**Laborers Pension and Welfare Funds***
**FILE #:**

ORIGINAL PROOF OF SERVICE

TRAC
384



EXHIBIT
B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LABORERS' PENSION FUND; ET AL | COURT DATE: |
| PLAINTIFF(S) | Case No.<br>08 C 2516 |
| vs. | |
| JDR SEWER AND WATER CONSTRUCTION, LLC; ET AL | SERVICE DOCUMENTS:<br>SUMMONS & COMPLAINT |
| DEFENDANT(S) | |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not party to nor interested in the above entitled action, and is competent to be a witness therein.

On **May 11, 2008**, at **11:30 AM**, I served the above described documents upon **ANNITA L. CAPUTO** as shown be

**ABODE SERVICE** was made by leaving copies thereof at the defendant's dwelling house or usual place of abode a person of suitable age and discretion then residing therein: **JOE CAPUTO / SPOUSE.**

Said service was effected at **134 E. BROOKFIELD AVE, MT. PROSPECT, IL 60056.**

**DESCRIPTION:**   Gender: **M**   Race: **WHITE**   Age: **48**   Hgt: **5'10"**   Wgt: **178**   Hair: **BROWN**   Glasses: **NO**

I declare under penalties of perjury that the information contained herein is true and correct.

**Ryan Flaska, Lic #: 117-001119**
**Judicial Attorney Services, Inc.**
**2100 Manchester Rd., Ste 900**
**Wheaton, IL 60187**
**(630) 221-9007**

SUBSCRIBED AND SWORN to before me this 12th day of May, 2008

_Joan C. Harenberg_

OFFICIAL SEAL
JOAN C HARENBERG
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/13/09

NOTARY PUBLIC

EXHIBIT
C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
                     Plaintiffs, )    Case No.  08 C 2516
      v. )
                           )    Judge GOTTSCHALL
JDR SEWER AND WATER CONSTRUCTION, )
LLC, an involuntarily dissolved Illinois limited )
liability company - member managed, and )
DOMINIC M. GIANNINI, JR., individually, )
and ANNITA L. CAPUTO, individually, )
                 Defendants. )

## AFFIDAVIT OF JAMES FOSCO

JAMES FOSCO, being first duly sworn on oath, deposes and states as follows:

1.     I am a Field Representative employed by the Laborers' Pension Fund and

the Laborers' Welfare Fund of the Construction and General Laborers' District Council

of Chicago and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in

the above-referenced action.  My responsibilities include oversight of the collection of

amounts owed by Defendants JDR Sewer and Water Construction, LLC, (hereinafter

"Company"), Dominic M. Giannini Jr., (hereinafter "Giannini"), and "Annita Caputo

(hereinafter "Caputo").  This Affidavit is submitted in support of the Laborers' Funds'

Motion for Entry of Default Judgment in Sum Certain.  I have personal knowledge

regarding the statements contained herein.



2.     On August 26, 2004, Company entered into an Installment Note ("Note") with the Funds to submit on a monthly basis, 48 installment payments for contributions totaling $160,000.00 owed to the Funds. A true and accurate copy of the Note is attached hereto as Exhibit D-1.

3.     On August 26, 2004, Giannini and Caputo signed a Guaranty of Payment and Indemnification ("Guaranty") both individually guaranteeing payment of the $160,000.00 due under the Note to the Funds. A true and accurate copy of the Guaranty of Payment and Indemnification is attached hereto as Exhibit D-2.

4.     Upon executing the Note, Company paid the 20% downpayment on the Note and paid 38 of the required 48 monthly payments. Company has not made an installment payment since October, 2007 and pursuant to paragraph 5 of the Note, the remaining amount of $12,500.00 is now owing, plus liquidated damages of $1,000.00 on the unpaid November, 2007 through June 1, 2007 payments. A true and accurate copy of the Payment Plan spreadsheet detailing the Note amounts paid and unpaid is attached as Exhibit D-3.

FURTHER AFFIANT SAYETH NAUGHT.

_____
James Fosco

Subscribed and sworn to before me
this 30th day of June, 2008
_____
Notary Public

```
"OFFICIAL SEAL"
Susan M. Diforti
Notary Public, State of Illinois
My Commission Expires Oct. 5, 2008
```

2

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund") and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Health and Welfare Fund" or collectively the "Funds"), the parties of the first part, and Dominic, Jr Inc. and JDR Sewer & Water Construction LLC (the "Company"), the party of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues:

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the audit period of January 1, 1997 thru June 30, 2002.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the audit period of January 1, 1997 thru June 30, 2002.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1.  The Company will pay $160,000.00 to the Funds.

2.  Simultaneously with the execution of this Note, the Company will pay $100,000.00 of the total outstanding indebtedness.

3.  For forty-eight (48) consecutive months commencing on September 1, 2004 and ending on August 1, 2008, the Company will pay $1,250.00 per month to payoff the remaining $60,000.00 liability.

4.  The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

5.  Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Fund's respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this note.

6.  This Installment Note is conditioned on the Company's staying current on its obligations to the Funds under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution reports and to make timely contribution payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

7.  The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

8.  The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the 26 day of the 8 , 2004.

Dominic, Jr., Inc. and JDR Sewer & Water Construction, LLC

EXHIBIT D-1

By: _Domenic Gannuscia Jr_

Title: _President_

**Laborers' Pension Fund**

By: _[signature]_

**Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.**

By: _[signature]_

# GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of ___8-26-04___ by the undersigned, _____, (the "Guarantors"), to and for the benefit of the **LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY** (collectively, the "Funds").

WHEREAS, **Dominic Jr., Inc. & JDR Sewer & Water Construction, LLC** (the "Company") has agreed to pay a total of **$160,000.00** to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantors executes this Guaranty: and

WHEREAS, the Guarantors has a financial interest in the Company and will be benefited by the Note:

NOW WHEREAS, in consideration of the foregoing, the Guarantors agrees as follows:

1. **Guaranty of Payment and Indemnification.** The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the forty-eight (48) month payment period including interest and liquidated damages for late or unpaid payments due on the note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgement bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantors hereunder (the obligations of Guarantors under this Paragraph 1 are collectively hereinafter referred to as the "Obligations").

2. **Continuing Guaranty.** This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the party of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantors may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantors.

3. **Waivers.** Guarantors waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantors shall remain liable as principal, notwithstanding any act, omision or thing which might otherwise operate as a legal or equitable discharge of Guarantors, until all of the Company's obligations shall have been fully paid and performed.

4. **Subrogation.** Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the guarantors expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantors against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantors may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantors agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other period (including and surety), either directly or as an attempted set off to any action commenced against the Guarantors by the Company (as borrower or in any other capacity) or any other person.

1



EXHIBIT
D-2

5. **Independent Obligations.** The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds form suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. **Acceleration.** In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. **Effect of Bankruptcy.** This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. **Termination.** This Guaranty shall remain in full force and effect as to the Guarantors until all of the Companys' Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations form time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. **The Company's Financial Condition.** The guarantors assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantors any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. **Expenses.** The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. **Delay, Cumulative Remedies.** No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantors will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantors are cumulative.

12. **Binding Effect.** This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantors and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantors, the obligations of such deceased Guarantors shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. **Warranties.** Guarantors makes to the Funds the following representations and warranties:

(a) **Authorization.** Guarantors has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) **No Conflict.** The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitue a default under, any indenture, agreement or any other instrument to which Guarantors is a party or by which Guarantors or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

2

(c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantors at law of in equity or before or by governmental agency or instrumentality which involve any of the transactions herein contemplated, or the possibility of any judgement or liability which may result in any material and adverse change in the financial condition of any Guarantors. Guarantors is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantors, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

14. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in period, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantors refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantors                                     In Case of the Funds:

c/o JOR Sewer+Water Construction, LLC      Collection Counsel
672 E. Irving Park Rd.                     Stanley Eisenstein
Suite 109                                  Katz, Friedman, Eagle, Eisenstein & Johnson
Roselle, IL 60172                          77 W Washington
                                           20th Floor
                                           Chicago IL 60602

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, Joshua O. Holleb. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantors of any obligations under this guaranty.

15. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

16. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and inter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue or any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

17. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

18. <u>Death of a Guarantor.</u> In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

3

IN WITNESS WHEREOF, the undersigned Guarantors have executed this instrument as of the date and year first above written.

_Dominic Giannini Jr._
Dominic Giannini Jr.

_Annita Caputo_
Annita Caputo

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
Social Security Number

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
Social Security Number

Date: 8-24-04

Date: 8/26/04

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTORS:

_____

Dated: _____

4

Fax from : 1708947?255

11/29/2007

# PAYMENT PLAN WORKSHEET

| COMPANY | DOMINO JR., INC. | | CODE | 21135 |

| PHONE# | (630) 806-2720 | | CONTACT PERSON | DOM |

| NUMBER OF PAYMENTS | 48 | | FIELD REP | JF |

PAYMENT PLAN COVERS THE MONTHS OF _____ REVISED AUDIT, 1/1/97 - 6/30/02

TOTAL WELFARE & PENSION _____

LESS 20% DOWN _____

EQUALS AMOUNT FINANCED _____

PLUS ATTORNEY COSTS _____
PLUS AUDIT COSTS _____
PLUS NOTE INTEREST _____

EQUALS TOTAL W & P _____

WELFARE PAYMENT _____
PENSION PAYMENT _____
TOTAL _____
#PAYMENTS _____
TOTAL W & P _____       48

| BEG BALANCE | PAYMENT NUMBER | PAYMENT DUE DATE | SCHEDULED PAYMENT | ACTUAL PAID | CHECK# | DATE REC'D | SCHEDULED PAYMENT | ACTUAL PAID | CHECK# | DATE REC'D | END BALANCE OWED | ENTER "1" IF LATE | 10% LATE FEE (OWED/PAID) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 160,000.00 | 24 | 8/1/2008 | 1,250.00 | 1,250.00 | 1880 | 1/19/2007 | | | | | 30,000.00 | 1 | (125.00) |
| | 25 | 9/1/2008 | 1,250.00 | 1,250.00 | 1880 | 1/19/2007 | | | | | 28,750.00 | 1 | (125.00) |
| | 26 | 10/1/2008 | 1,250.00 | 1,250.00 | 1880 | 1/19/2007 | | | | | 27,500.00 | 1 | (125.00) |
| | 27 | 11/1/2008 | 1,250.00 | 1,250.00 | 1880 | 1/19/2007 | | | | | 26,250.00 | 1 | (125.00) |
| | 28 | 12/1/2008 | 1,250.00 | 1,250.00 | 1880 | 1/19/2007 | | | | | 25,000.00 | 1 | (125.00) |
| | 29 | 1/1/2007 | 1,250.00 | 1,250.00 | 2001 | 5/18/2007 | | | | LATE FEE PAYMENT | 825.00 | 1 | 825.00 |
| | 30 | 2/1/2007 | 1,250.00 | 1,250.00 | 2001 | 5/18/2007 | | | | | 23,750.00 | 1 | (125.00) |
| | 31 | 3/1/2007 | 1,250.00 | 1,250.00 | 2001 | 5/18/2007 | | | | | 22,500.00 | 1 | (125.00) |
| | 32 | 4/1/2007 | 1,250.00 | 1,250.00 | 2001 | 5/18/2007 | | | | | 21,250.00 | 1 | (125.00) |
| | 33 | 5/1/2007 | 1,250.00 | 1,250.00 | 2184 | 11/1/2007 | | | | | 20,000.00 | 1 | (125.00) |
| | 34 | 6/1/2007 | 1,250.00 | 1,250.00 | 2184 | 11/1/2007 | | | | LATE FEE PAYMENT | 900.00 | | 900.00 |
| | 35 | 7/1/2007 | 1,250.00 | 1,250.00 | 2184 | 11/1/2007 | | | | | 18,750.00 | 1 | (125.00) |
| | 36 | 8/1/2007 | 1,250.00 | 1,250.00 | 2184 | 11/1/2007 | | | | | 17,500.00 | 1 | (125.00) |
| | 37 | 9/1/2007 | 1,250.00 | 1,250.00 | 2184 | 11/1/2007 | | | | | 16,250.00 | 1 | (125.00) |
| | 38 | 10/1/2007 | 1,250.00 | 1,250.00 | 2184 | 11/1/2007 | | | | LATE FEE PAYMENT | 750.00 | | 750.00 |
| | 39 | 11/1/2007 | 1,250.00 | | | | | | | | 15,000.00 | 1 | (125.00) |
| | 40 | 12/1/2007 | 1,250.00 | | | | | | | | 13,750.00 | 1 | (125.00) |
| | 41 | 1/1/2008 | 1,250.00 | | | | | | | | 12,500.00 | | (125.00) |
| | 42 | 2/1/2008 | 1,250.00 | | | | | | | | 12,500.00 | | (125.00) |
| | 43 | 3/1/2008 | 1,250.00 | | | | | | | | 12,500.00 | | (125.00) |
| | 44 | 4/1/2008 | 1,250.00 | | | | | | | | 12,500.00 | | (125.00) |
| | 45 | 5/1/2008 | 1,250.00 | | | | | | | | 12,500.00 | | (125.00) |
| | 46 | 6/1/2008 | 1,250.00 | | | | | | | | 12,500.00 | | (125.00) |
| | 47 | 7/1/2008 | 1,250.00 | | | | | | | | 12,500.00 | | (125.00) |
| | 48 | 8/1/2008 | 1,250.00 | | | | | | | | 12,500.00 | | (125.00) |
| TOTALS | 160,000.00 | | 180,000.00 | 147,500.00 | | | | | | | 12,500.00 | | |



EXHIBIT
D-3

# PAYMENT PLAN WORKSHEET

COMPANY __DOMINIC JR., INC.__

PHONE# __(630)806-2720__    CONTACT PERSON __DOM__    CODE __21138__

NUMBER OF PAYMENTS __48__    FIELD REP __JF__

PAYMENT PLAN COVERS THE MONTHS OF __REVISED AUDIT, 1/1/97 - 6/30/02__

11/29/2007

|  | Balance | Payment Number | Payment Due Date | Scheduled Payment | Actual Paid | Check# | Date Rec'd |
|---|---|---|---|---|---|---|---|
| EQUALS TOTAL W & P | | | | | | | |
| PLUS NOTE INTEREST | | | | | | | |
| PLUS AUDIT COSTS | | | | | | | |
| PLUS ATTORNEY COSTS | | | | | | | |
| EQUALS AMOUNT FINANCED | | | | | | | |
| LESS 20% DOWN | | | | | | | |
| TOTAL WELFARE & PENSION | | | | | | | |
| DUES | 7,127.82 | XXXX | AT SIGNING | 7,127.82 | 7,127.82 | 947 | 8/28/2004 |
| LOCLMCC | 292.31 | XXXX | AT SIGNING | 292.31 | 292.31 | 947 | 8/28/2004 |
| MCIAF | 907.85 | XXXX | AT SIGNING | 907.85 | 907.85 | 947 | 8/28/2004 |
| TRAIN | 3,783.52 | XXXX | AT SIGNING | 3,783.52 | 3,783.52 | 947 | 8/28/2004 |
| LEGET | 900.28 | XXXX | AT SIGNING | 900.28 | 900.28 | 947 | 8/28/2004 |
| CISCO | 23.54 | XXXX | AT SIGNING | 23.54 | 23.54 | 947 | 8/28/2004 |
| $ DOWN | 87,004.88 | XXXX | AT SIGNING | 87,004.88 | 87,004.88 | 81593, 947 | 8/28/2004 |

WELFARE PAYMENT _____
PENSION PAYMENT _____
TOTAL _____
# PAYMENTS __48__
TOTAL W & P _____

| Payment Number | Payment Due Date | Scheduled Payment | Actual Paid | Check# | Date Rec'd | Scheduled Payment | Actual Paid | Check# | Date Rec'd | End Balance Owed | Enter "I" if Late | 10% Late Fee (Owed/Paid) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEG BALANCE | | 50,000.00 | | | | XXXX | XXXX | XXXX | XXXX | 87,004.88 | | (0.00) |
| 1 | 9/1/2004 | 1,250.00 | 1,250.00 | 1168 | 3/24/2004 | XXXX | XXXX | XXXX | XXXX | 58,750.00 | 1 | (125.00) |
| 2 | 10/1/2004 | 1,250.00 | 1,250.00 | 1168 | 3/24/2005 | XXXX | XXXX | XXXX | XXXX | 57,500.00 | 1 | (125.00) |
| 3 | 11/1/2004 | 1,250.00 | 1,250.00 | 1168 | 3/24/2005 | XXXX | XXXX | XXXX | XXXX | 56,250.00 | 1 | (125.00) |
| 4 | 12/1/2004 | 1,250.00 | 1,250.00 | 1168 | 3/24/2006 | XXXX | XXXX | XXXX | XXXX | 55,000.00 | 1 | (125.00) |
| 5 | 1/1/2005 | 1,250.00 | 1,250.00 | 1168 | 3/24/2006 | XXXX | XXXX | XXXX | XXXX | 53,760.00 | 1 | (125.00) |
| 6 | 2/1/2005 | 1,250.00 | 1,250.00 | 1168 | 3/24/2005 | XXXX | XXXX | XXXX | XXXX | 52,500.00 | 1 | (125.00) |
| 7 | 3/1/2005 | 1,250.00 | 1,250.00 | 1168 | 3/24/2005 | XXXX | XXXX | XXXX | XXXX | 51,250.00 | 1 | 875.00 (LATE FEE PAYMENT) |
| 8 | 3/12/2005 | 1,250.00 | 1,250.00 | 1281 | 8/24/2005 | XXXX | XXXX | XXXX | XXXX | 50,000.00 | 1 | (125.00) |
| 9 | 4/12/2005 | 1,250.00 | 1,250.00 | 1281 | 8/24/2005 | XXXX | XXXX | XXXX | XXXX | 48,750.00 | 1 | (125.00) |
| 10 | 5/12/2005 | 1,250.00 | 1,250.00 | 1281 | 8/24/2005 | XXXX | XXXX | XXXX | XXXX | 47,500.00 | 1 | (125.00) |
| 11 | 6/12/2005 | 1,250.00 | 1,250.00 | 1304 | 8/24/2005 | XXXX | XXXX | XXXX | XXXX | 46,250.00 | 1 | (125.00) |
| 12 | 7/12/2005 | 1,250.00 | 1,250.00 | 1354 | 10/24/2005 | XXXX | XXXX | XXXX | XXXX | 45,000.00 | 1 | (125.00) |
| 13 | 8/12/2005 | 1,250.00 | 1,250.00 | 1384 | 10/24/2005 | XXXX | XXXX | XXXX | XXXX | 43,750.00 | 1 | 375.00 (LATE FEE PAYMENT) |
| 14 | 10/1/2005 | 1,250.00 | 1,250.00 | 1384 | 2/2/2006 | XXXX | XXXX | XXXX | XXXX | 42,500.00 | 1 | (125.00) |
| 15 | 11/1/2005 | 1,250.00 | 1,250.00 | 1466 | 2/2/2006 | XXXX | XXXX | XXXX | XXXX | 41,250.00 | 1 | (125.00) |
| 16 | 12/1/2005 | 1,250.00 | 1,250.00 | 1466 | 2/2/2006 | XXXX | XXXX | XXXX | XXXX | 40,000.00 | 1 | (125.00) |
| 17 | 1/12/2006 | 1,250.00 | 1,250.00 | 1466 | 2/2/2006 | XXXX | XXXX | XXXX | XXXX | 38,750.00 | 1 | (125.00) |
| 18 | 2/1/2006 | 1,250.00 | 1,250.00 | 1466 | 2/2/2006 | XXXX | XXXX | XXXX | XXXX | 37,500.00 | 1 | 500.00 (LATE FEE PAYMENT) |
| 19 | 3/1/2006 | 1,250.00 | 1,250.00 | 1488 | 8/3/2006 | XXXX | XXXX | XXXX | XXXX | 36,250.00 | 1 | (125.00) |
| 20 | 4/1/2006 | 1,250.00 | 1,250.00 | 1673 | 8/3/2006 | XXXX | XXXX | XXXX | XXXX | 36,000.00 | 1 | (125.00) |
| 21 | 5/12/2006 | 1,250.00 | 1,250.00 | 1673 | 8/3/2006 | XXXX | XXXX | XXXX | XXXX | 33,760.00 | 1 | (125.00) |
| 22 | 6/12/2006 | 1,250.00 | 1,250.00 | 1673 | 8/3/2006 | XXXX | XXXX | XXXX | XXXX | 32,500.00 | 1 | (125.00) |
| 23 | 7/1/2008 | 1,250.00 | 1,250.00 | 1673 | 8/3/2008 | XXXX | XXXX | XXXX | XXXX | 31,250.00 | 1 | 625.00 (LATE FEE PAYMENT) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
                   Plaintiffs, )      Case No. 08 C 2516
      v. )
                          )      Judge GOTTSCHALL
JDR SEWER AND WATER CONSTRUCTION,)
LLC, an involuntarily dissolved Illinois limited )
liability company - member managed, and )
DOMINIC M. GIANNINI, JR., individually, )
and ANNITA L. CAPUTO, individually, )
                 Defendants. )

## AFFIDAVIT OF MICHAEL CHRISTOPHER

     MICHAEL CHRISTOPHER, being first duly sworn on oath, deposes and states
as follows:

     1.     I am a Field Representative employed by the Laborers' Pension Fund and

the Laborers' Welfare Fund of the Construction and General Laborers' District Council

of Chicago and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in

the above-referenced action. My responsibilities include oversight of the collection of

amounts owed by Defendant JDR Sewer and Water Construction, LLC (hereinafter

"Company"). This Affidavit is submitted in support of the Funds' Motion for Entry of

Default Judgment in Sum Certain. I have personal knowledge regarding the statements

contained herein.

     2.     On July 17, 2003, the Company signed an Independent Construction

Industry Collective Bargaining Agreement ("Agreement") with the Construction and



General Laborers' District Council of Chicago and Vicinity and Local 152. A true and accurate copy of the Agreement is attached hereto as Exhibit E-1. Pursuant to the terms of the Agreement, the Company is bound to the terms of the relevant collective bargaining agreements incorporated by reference in the Agreement ("Collective Bargaining Agreements") and the Funds' respective Agreements and Declarations of Trust.

   3.       Pursuant to agreement, the Funds have been duly authorized to act as collection agents on behalf of the District Council for union dues owed to the District Council.

   4.       The Agreement, the Collective Bargaining Agreement, and the Funds' respective Agreements and Declarations of Trust, to which the Company is bound, require the Company to submit benefit and union dues reports and contribution payments by the tenth day of the following month. Payments which are not received within thirty days of this date are assessed liquidated damages in the amount of 10 percent of the principal amount of delinquent contributions, and 20 percent after June 1, 2007, and interest at a rate of prime plus 2 per cent as charged by JP Morgan Chase Bank from the date of delinquency forward. The Agreement and the Funds' respective Agreements and Declarations of Trust also obligate the Company to submit its books and records to the Funds for periodic audits to determine benefit contribution compliance. A copy of the relevant portions of the Collective Bargaining Agreement is attached as Exhibit E-2; a copy of the relevant portions of the Amended Agreement and Declaration of Trust creating the Laborers' Pension Fund is attached as Exhibit E-3; a copy of the relevant portions of the Amended Health and Welfare Department of the Construction and

General Laborers' District Council is attached as Exhibit E-4; and a copy of the

Agreement and Declaration of Trust Establishing the Construction and General Laborers'

District Council of Chicago and Vicinity Training Trust Fund  is attached hereto as

Exhibit E-5.

     5.    An audit of Company's books and records was conducted for the time

period of August 1, 2004 through August 31, 2007.  A true and accurate copy of the audit

is attached hereto as Exhibit E-6, which revealed the following delinquencies:

| | |
|---|---|
| Welfare Fund | $4,590.40 |
| Liquidated Damages | $  459.04 |
| Interest | $1,018.33 |
| Pension Fund | $2,873.60 |
| Liquidated Damages | $  287.36 |
| Interest | $  636.62 |
| Training Fund | $  108.80 |
| Liquidated Damages | $   10.80 |
| Interest | $   24.14 |
| Dues | $  206.63 |
| Liquidated Damages | $   20.66 |
| Shortages | $    3.00 |
| LDCLMCC | $   38.40 |
| Liquidated Damages | $    3.84 |
| Interest | $    8.77 |
| MIAF | $   11.20 |
| Liquidated Damages | $    1.12 |
| Interest | $    2.60 |
| CAICA | $   25.60 |
| Liquidated Damages | $    2.56 |
| Interest | $    5.83 |
| LECET | $   16.00 |
| Liquidated Damages | $    1.60 |
| Interest | $    3.66 |
| CISCO | $    1.60 |
| Liquidated Damages | $    0.06 |
| Interest | $    0.36 |
| | |
| TOTAL | $10,351.78 |

3

A true and accurate copy of my revised audit summary sheet is attached hereto as

Exhibit E-7.

8.    The cost of the audit was $841.25.

FURTHER AFFIANT SAYETH NAUGHT.

*Michael Christopher*
Michael Christopher

Subscribed and sworn to before me
this 30th day of June, 2008.
*Elizabeth A. Gallagher*
Notary Public

OFFICIAL SEAL
ELIZABETH A. GALLAGHER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-13-2012

4



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO
101 BURR RIDGE PARKWAY • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8299 • FAX: 630/655-8853

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **J D R Sewer & Water Cons. LLC** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and incorporating its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, together with any other Local Unions that may come within the Union's jurisdiction ("Local Union"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

**1. Recognition.** The Employer, in response to its Union's request for recognition as the majority 9(a) representative of its Laborer employees, and the Union's offer to show evidence of its majority support, hereby recognizes the Union under Section 9(a) of the Act as the sole and exclusive collective bargaining representative for the employees now and hereunder employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment without the need for a Board certified election. The Employer has not assigned its duties for purposes of collective bargaining with the Union to any association or any other employer or employer association, and hereby waives its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension thereof, without written approval from the Union. The Employer agrees by this Agreement, and extensions hereof, provided that it employs at least one Laborer per year.

**2. Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreements, as designated by the Union, between the Union and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.D.C.N./C.A.W.C.C., the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Area Rail Contractors Association, the Chicago Scaffolding Association, and all other employer associations with whom the Union or its affiliated Local Unions has an agreement. If the applicable collective bargaining agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a new agreement has been established, which shall be incorporated retroactively herein. It is further agreed that where the Employer works within the geographic jurisdiction of the Union's affiliated Local Unions that have negotiated an association agreement effective within the Local Union's jurisdiction, then the Local Union agreement is herein specifically incorporated into this Agreement and shall supersede the area-wide standard association agreements within the locality for which it is negotiated in the case of any conflict between them. Notwithstanding the foregoing, this Agreement supersedes all contrary terms in either the Local Union or area-wide association agreements.

**3. Dues Checkoff.** The Employer shall deduct from the wages of employees uniform working dues in the amount of 1.5% of gross wages, or such other amount as directed by the Union, and shall remit monthly to the designated Union office the same so deducted, together with an accurate list showing the employees from whose dues were deducted, all the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. It is the parties' intention that these deductions comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and such deductions be made only pursuant to written assignments from each employee on whose behalf such deductions are made, which shall not be irrevocable for a period of more than one year or beyond the termination date of the labor agreement, whichever occurs sooner.

**4. Work Jurisdiction.** This Agreement covers all work within the Union's work jurisdiction as set forth in the Union's Statement of Jurisdiction, receipt of which is hereby acknowledged, and as amended by the Union from time to time. The Statement of Jurisdiction is incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of this assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work and coming within the above-described jurisdiction of the Union to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. When the Employer contracts out or sublets any of the work coming within the above-described jurisdiction of the Union, it shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

Where Laborers covered by this Agreement perform work outside the Chicago area, the Employer shall, if covered under a local Union-affiliated labor agreement in the area, contribute to the local fringe benefit funds in the amounts set forth in the local agreement. Otherwise, it shall remit all fringe benefit fund contributions in the amounts and to the funds as required under this Agreement.

**5. Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Fund), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust ("LECET"), and to all other designated Union-affiliated benefit and labor-management funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust Instruments and amendments thereto. The Employer ratifies and confirms the appointment of the Employer Trustees who shall, together with their successor Trustees, carry out the terms and conditions of the Trust Instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the Trust Agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable agreements. Upon written notice to the Employer, the Union may increase the maximum surety bond in an amount not exceeding one hundred thousand dollars where necessary to ensure Employer compliance with its obligations.

**6. Wages and Industry Funds.** The Employer shall pay all the negotiated hourly wages, fringe benefit and industry fund contributions as it is bound to pay under the applicable Collective Bargaining Agreements, including, where applicable, contributions to the Chicago-Area LECET and designated labor-management and industry advancement funds, except that no contributions shall be made to MCIAF unless consented to and upon written direction from the Union. All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001 shall be incorporated into this Agreement. The Union expressly reserves its sole right to allocate and apportion each annual total economic increase.

**7. Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment or underpayment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, subcontracting in violation hereof, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other lawful and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

**8. Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph. The Union may agree to enforce the terms hereof.

**9. Termination.** This Agreement shall remain in full force and effect from June 1, 2001 (unless dated differently below) through May 31, 2006, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new area-wide negotiated agreements with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given as provided above.

**10. Execution.** The Employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Agreements.

Dated: **July 17,** 20**03**

ACCEPTED:

Laborers' Local Union No. **152**

_____
CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By _____
Frank Riley, President & Secretary-Treas.

By _____
James P. Connolly, Business Manager

For Office Use Only: **UCA**

**J D R Sewer & Water Cons. LLC**
(Employer)

FEIN No. **77-0603396**

**Lorenzo Filipelli   Asst Manager**
(Print Name and Title)

_____
(Signature)

**725 Washington Ct**
(Address)

**Roselle IL 60172**
(City, State and Zip Code)

**630-606-2220    630-924-7646**
(Telephone/Fax)

**EXHIBIT**
**E-1**

JUNE 1, 2006 TO MAY 31, 2010

# AGREEMENT

between the

## CHICAGO AREA INDEPENDENT CONSTRUCTION ASSOCIATION

and the

## CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

affiliated with the

## LABORERS' INTERNATIONAL UNION OF NORTH AMERICA



EXHIBIT
E-2

## Article 4
## SUBCONTRACTING

**Paragraph 1.** On work covered by this Agreement, the contractor or subcontractor agrees to see that all subcontractors on work within the Union's jurisdiction on this job site adhere to the wages and fringes contained in this Agreement when the subcontract is let by the contractor or subcontractor. If, upon the Union's request, the subcontractor chooses to sign a current labor agreement with the Union (although such signing might not be required under Paragraph 1), then the contractor shall be relieved of any liability under this Paragraph 1.

**Paragraph 2.** The Employer agrees that it will not contract or subcontract any work covered by this Agreement to be done at the site of construction, alteration, painting or repair of a building, structure or other work, except to a person, firm or corporation that is party to the applicable collective bargaining agreement with the Union.

**Paragraph 3.** If an Employer, bound to this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund.

8

## Article 5
## WAGES

**Paragraph 1.** The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2006 to and including May 31, 2010, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include a total economic increase of $2.90 per hour effective June 1, 2006 to May 31, 2007 to be allocated between wages and fringe benefits by the Union in its sole discretion, for a wage rate of $31.55 per hour, which includes the dues deduction; June 1, 2007 to May 31, 2008, $3.00 per hour total economic increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion; June 1, 2008 to May 31, 2009, $3.00 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion; June 1, 2009 to May 31, 2010, $3.10 per hour total economic increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. The foregoing allocations may include allocations to LECET and LDC/LMCC.

**Dosimeter Use:** A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

**Power Pac:** When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

**Apprentice wages:** Apprentice Laborers shall be paid according to the following schedule:

Apprentices (1st 6 months) . . . . . . . 60% of base rate:
Apprentices (2nd 6 months) . . . . . . . 70% of base rate:
Apprentices (3rd 6 months) . . . . . . . 80% of base rate:
Apprentices (4th 6 months) . . . . . . . 90% of base rate:
Apprentices (after 24 months) . . . . . 100% of base rate:

9

Should the Union enter into an agreement with the Builders Association of Greater Chicago, the Mason Contractors Association of Greater Chicago, the Illinois Road and Transportation Builders Association, the Underground Contractors Association, the Fox Valley General Contractors Association, the Lake County Contractors' Association, or the Contractors Association of Will and Grundy Counties that provides an annual total economic increase different than the annual total economic increase set forth in this paragraph, then such rates shall be incorporated into the applicable portion(s) of this Agreement that correspond to the trade and geographic scope of such association agreement.

**Paragraph 2. WELFARE:** Beginning the period from June 1, 2006 to May 31, 2007, the Employer agrees to make Health and Welfare contributions of $7.46 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $7.46 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto.

**Paragraph 3. PENSION:** Beginning June 1, 2006 the Employer agrees to make a pension contribution of $4.84 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare

10

payments herein stipulated. This $4.84 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages

amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees refer the account to legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement, including the obligation to remit Union Dues under Article 3.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

Paragraph 4. Appointment of Trustees to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund. The parties agree that the Employer-appointed trustees of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund and training and apprentice funds to which Employers are required to contribute shall be appointed solely by Employer associations that enter into collective bargaining agreements with the Union requiring contributions to such funds ("Signatory Associations"). It is further agreed that the Trust Agreements establishing such funds shall be amended to replace any Employer association that appoints a trustee and does not have a labor agreement with the Union, replacing it with a Signatory Association. The Union and Signatory Associations shall meet within 30 days of the effective dates of agreements covering a majority of Fund participants to review the appointment of Employer Trustees of the funds. It is agreed that the numbers of hours contributed by Employers represented by Signatory Associations compared to contributions by other Signatory Associations during the preceding year shall be the basis for assigning the number of trustee appointments. If such parties are unable to agree on the Signatory Associations appointments to be made by each Signatory Association the dispute shall be submitted to expedited arbitration under Subpart D of the Policies and Procedures of the Federal Mediation and Conciliation Service.

Paragraph 5. Article III Section 2 of the trust agreements of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund shall be amended to include the following: "Association-appointed Trustees must be full-time employees of Contributing Employers within the Association's membership. A Contributing Employer shall be defined as an

Employer that has employed an average of five (5) or more Laborers performing bargaining unit work for whom contributions have been made per month in each of the previous three (3) calendar years."

**Paragraph 6. Section 415 Excess Benefit Fund:** A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

**Paragraph 7.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Vacation Fund, a jointly-trusteed vacation plan established for the purpose of providing income to members during their winter layoffs. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 8.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any

amendments thereto, establishing the Chicagoland Laborers' Annuity Fund, a jointly-trusteed defined contribution plan providing a supplemental retirement benefit. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 9. SUPERVISORS:** To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 2 and 3 of this Article for this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 2 and 3 of this Article.

**Paragraph 10. Special Rules for Bonding.** An employer that is owned or managed, in whole or part, by an individual who currently has or previously had in the last ten (10) years ownership or principal managerial responsibility for another contributing employer that currently is or ceased doing business when delinquent to the Funds shall be required to post for the benefit of the Funds an additional cash bond or obtain a surety bond from a Fund-approved insurer in an amount equal to twice the amount of the other contributing employer's delinquency. This amount may be adjusted by the Benefit Fund Trustees for each individual employer. This bond shall be in addition to and separate from the bond required elsewhere in this Agreement.

## Article 6
## BONDING

**Paragraph 1.** All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this

Agreement. The bond shall be placed in the custody of the Pension and Welfare Funds.

Paragraph 2. If the Employer employs between seven (7) and ten (10) Laborers, the surety bond shall be increased to $15,000. If the Employer employs between eleven (11) and twenty (20) Laborers, the surety bond shall be increased to $25,000. If the Employer employs twenty-one (21) to forty (40) Laborers, the surety bond shall be increased to $35,000. If the Employer employs forty-one (41) or more Laborers, the surety bond shall be increased to $45,000.

Paragraph 3. Contractors shall be required to obtain an appropriate bond within thirty (30) days of executing this Agreement, which bond may also be posted in cash. Should the Employer fail to comply with the provisions of Paragraphs 1-3 of this Article, the Union may withdraw its employees or strike until such compliance occurs, and the Employer shall further be liable for all costs, including attorneys fees, incurred in enforcing these provisions.

Paragraph 4. The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;

(b) Termination of business;

(c) Change of name commonly used in business operation;

(d) Change in form of business organization;

(e) Incorporation of business;

(f) Dissolution of corporation;

(g) Name and business organization of successor; and

(h) Admission to or withdrawal from any association operating as a multi-employer bargaining unit.

16

## Article 7
## INDUSTRY FUND

Paragraph 1. Each Employer shall pay into an industry advancement fund the amount of eight cents ($.08) for each hour worked for the Employer by those of his Employees covered by this Agreement. This payment shall be collected for and remitted only to funds as provided under written agreements between an employer association and the Union.

Each Employer shall pay into the Chicago-Area Laborers-Employers Cooperation and Education Trust ("LECET"), the amount of five cents ($.05) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

Each Employer shall pay into the Laborers' District Council Labor Management Cooperation Committee ("LDC/LMCC"), the amount of twelve cents ($.12) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

Paragraph 2. The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Industry Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of said Industry Fund pursuant to said Agreement and Declaration of Trust and amendments thereto. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the LECET and LDC/LMCC, as well as any amendments thereto.

Paragraph 3. Inasmuch as the existence and utilization of this Industry Fund should result in increased construction and, therefore, in increased construction job opportunities for Employees, the Union agrees to cooperate in assuring that the contributions required by this

17

Article are in fact made by Employers bound by this Agreement.

## Article 8
## PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS

**Paragraph 1.** Except as provided under paragraph 2 below, wages must be paid by payroll check and shall include a stub or statement showing the number of straight time and overtime hours worked and rate of pay. Failure on the part of the Employer to have sufficient funds at the bank to meet pay checks issued workers, shall deprive such Employers henceforth from the right to pay by checks and Joint Grievance Committee shall assess such Employer a sum equal to not less than the expense incurred in the collection of the amounts due because of such insufficient funds to meet checks so issued.

**Paragraph 2.** Direct Deposit: In lieu of paying wages by payroll check, the Employer may make payment by electronic bank draft if the employee voluntarily accepts such alternate method of payment. The Employer shall not mandate electronic banking as a condition of employment. Electronic wage payments must be transferred to the employee's bank account no later than the employee's regular pay day and at no cost to the employee. If payment is made by electronic bank draft, the Employee must also be provided a record of hours worked, rates of pay, and deductions made, at the same time and containing the same information as if wages were paid by payroll check.

If full wages are not timely transferred to the employee's account, the Employer shall pay the employee an additional four (4) hours pay for each day or portion thereof until full wages are received. Employers who vio-

late the provisions of these paragraphs shall be denied the use of electronic banking for wage payments.

**Paragraph 3.** The Union agrees that the Employees whom it represents will accept and demand the wages and fringe benefit payments set forth in this Agreement, and the employer agrees to pay the wages and fringe benefit payments herein stipulated.

Claims for Shortages: Claims by Employees for shortages must be made within three (3) weeks after shortage is discovered.

**Paragraph 4.** Payment by the Employer and acceptance by the Employee of less than the wage herein stipulated shall be a violation of this Agreement upon the part of each. Upon conclusive proof to the Joint Grievance Committee of such violation, the Employer shall immediately pay the unpaid balance due in accordance with the wage herein stipulated; and in addition thereto, shall pay the Joint Grievance Committee an amount equal to the penalties provided in the appropriate Article of General Conditions of this Agreement, but under no circumstances shall such penalties be less than fifty (50) percent of the amount of such pay shortage as just and liquidated damages because of such violation.

Upon conclusive proof that the Employer is guilty of paying less than the wages herein stipulated, then nothing in this Agreement shall be construed to take from the Union the right to remove workers it represents from the job, and henceforth to deny such Employer further right to the employment of its members.

Members of the Union who are found guilty of violation of this Agreement shall be dealt with by the Employer.

**Paragraph 5.** The Union reserves and shall have the right to remove its employees from any job upon the failure of the Employer to pay the wages due any of its Employees or fringe benefits which may be due by reason of the hours of employment.

# RESTATED AGREEMENT

## AND

# DECLARATION OF TRUST

### CREATING

# LABORERS' PENSION FUND

With Amendments Through
May 31, 2002



(b)    To enforce the provisions of the Pension Plan and the rules and regulations adopted by the Trustees in a uniform manner with respect to individuals similarly situated.

(c)    To determine questions arising under the Pension Plan or this Agreement, including the power to determine the rights of Employees and their Beneficiaries, and their respective benefits, and to remedy ambiguities, inconsistencies or omissions.

## ARTICLE VII

## FUNDING PENSION PLAN BENEFITS

Section I.    IN GENERAL.  In order to fund the benefits provided under the Pension Plan, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees at the times required by that agreement.  The rate of contributions shall be determined by the applicable Collective Bargaining Agreement or Participation Agreement, together with any amendments, supplements or modifications thereto.  Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be the same as the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union which covers Employees performing similar work.  No

-24-

Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the provisions of a Collective Bargaining Agreement or Participation Agreement and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer has entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2.    DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the

liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10%, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments owed by an Employer pursuant to an installment agreement, shall bear interest up to the prime rate of interest plus two points charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority to delegate the collection of contributions to a Collection Committee, which, in its discretion, may assess a lesser or greater amount or waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Fund. The Collection Committee may include trustees of the Laborers' Welfare Fund as members of the Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including court fees, audit fees, investigative costs, etc. The term "reasonable attorneys' fees" as used herein shall mean all

-26-

attorneys' fees in the amounts for which the Trustees become legally obligated including recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees, in lieu of any cash deposit, a bond in an amount not less than Five Thousand Dollars ($5,000.00) or in an amount consistent with the terms of the current collective bargaining agreements. In the event an Employer is repeatedly delinquent in its contribution payments to the Pension Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current collective bargaining agreements, in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3.    REPORT  ON  CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees on demand the names of its employees, their social security numbers, the hours worked by each employee, and such

-27-

other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may at any time have an audit made by an independent certified public accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Pension Fund forward unless given written authorization by the Administrator upon request to destroy said record. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ARTICLE VIII

## FILING CLAIMS AND REVIEW OF DENIALS OF CLAIM

Section 1.    FILING OF A CLAIM.    Claims for the payment of any benefits provided by the Pension Plan shall be filed, in writing, in accordance with the Rules and Regulations set forth in Article 7 of the Pension Plan.

-28-

**ADDENDUM A**

**RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
AND PRODUCED FOR AUDITS**

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1.  Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2.  Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.  Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.  Cash disbursement journals and general ledgers.

5.  Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6.  Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.  Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.  Daily time records filed by employees or supervisors.

9.  Source documents and lists of job codes and equipment codes.

10.  Certified payrolls for public sector jobs where such payrolls are required.

11.  Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12.  Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13.  If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above.  However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above.  In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.  The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1.  Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2.  Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union.  In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records.  The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof.    Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3.  When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied.  When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer.  If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept.  Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct.  All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4.  An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

**LABORERS' PENSION AND WELFARE FUNDS**

**POLICY FOR SCHEDULING OF AUDITS**

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

**AUDIT PERIOD**

1. **New Employers.** New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

1

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

2

AMENDMENT TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
CREATING LABORERS' PENSION FUND

WHEREAS, Article XII of the Restated Agreement and Declaration of Trust ("Trust Agreement") of the Laborer's Pension Fund (the "Fund") provides that the Board of Trustees have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching

1

themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

I.

The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

II.

The following is added as Section (4) to Article VII, "Funding Pension Plan Benefits":

"Section 4.  ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a)  EMPLOYER OWNED BY DEADBEAT EMPLOYER.  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)  EMPLOYER OPERATED BY DEADBEAT EMPLOYER.  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

2

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)    PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION.  The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund. The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section. Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable. Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)    MISCELLANEOUS PROVISIONS.  The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer."

III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

| | | | |
|---|---|---|---|
| *[signature]* | 9-18-06 | *[signature]* | 9/13/06 |
| **CHARLES COHEN** | **DATE** | **JOSEPH COCONATO** | **DATE** |
| *[signature]* | 9/18/06 | *[signature]* | 9/18/06 |
| **ALAN ESCHE** | **DATE** | **JAMES P. CONNOLLY** | **DATE** |
| *[signature]* | 9/18/06 | *[signature]* | 9/18/06 |
| **ROBERT C. KRUG** | **DATE** | **J. MICHAEL LAZZARETTO** | **DATE** |
| *[signature]* | 9/18/06 | *[signature]* | 9/18/06 |
| **RICHARD E. GRABOWSKI** | **DATE** | **FRANK RILEY** | **DATE** |
| *[signature]* | 9/18/06 | *[signature]* | 9/18/06 |
| **DAVID H. LORIG** | **DATE** | **LARRY WRIGHT** | **DATE** |
| *[signature]* | 9/18/06 | *[signature]* | 9-18-06 |
| **GARY LUNDSBERG** | **DATE** | **JEFF ZIEMANN** | **DATE** |

# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

Restated through
July 1, 2003


EXHIBIT
E-4

## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

Section 1.  IN GENERAL.  In order to fund the Benefits provided for by this Agreement each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement.  The rate of contributions shall be determined by the applicable Collective Bargaining Agreements or Participation Agreements, together with any amendments supplements or modifications thereto.  Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work.  No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void.  It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement.  All contributions shall be paid in the manner and form required by the Trustees.

Section 2.  DEFAULT IN PAYMENT OF CONTRIBUTIONS.  Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments.  The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.  Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment.  The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed.  All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof.  In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied.  The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Welfare

Fund. The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit fees and investigative costs. The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject. In the event an Employer is repeatedly delinquent in its contribution payments to the Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3.   REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.
The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

ADDENDUM  A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1.   Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2.  Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.  Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.  Cash disbursement journals and general ledgers.

5.  Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.          .

6.  Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.  Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.  Daily time records filed by employees or supervisors.

9.  Source documents and lists of job codes and equipment codes.

10.  Certified payrolls for public sector jobs where such payrolls are required.

11.  Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12.  Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13.  If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above.  However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above.  In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.  The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1

1.  Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2.  Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union.  In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records.  The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof.   Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3.  When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied.  When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer.  If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept.  Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct.  All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4.  An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

2

AMENDMENT TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND
GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

WHEREAS, Article XI of the Restated Agreement and Declaration of Trust ("Trust Agreement") provides that the Board of Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Fund") have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

## I.

**The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":**

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

## II.

**The following is added as Section (4) to Article VI, "Employer Contributions":**

"<u>Section 4.  ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.</u>

(a)     <u>EMPLOYER OWNED BY DEADBEAT EMPLOYER.</u>  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)     <u>EMPLOYER OPERATED BY DEADBEAT EMPLOYER.</u>  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)    PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION.  The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund.  The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section.  Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable.  Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)    MISCELLANEOUS PROVISIONS.  The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer. "

III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

3

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

| | | | |
|---|---|---|---|
| CHARLES J. GALLAGHER | DATE | JAMES P. CONNOLLY | 9/19/06 DATE |
| ALAN ESCHE | 9/19/06 DATE | RANDY DALTON | 9/19/06 DATE |
| RICHARD E. GRABOWSKI | 9/19/06 DATE | MARTIN FLANAGAN | 9-19-06 DATE |
| DAVID H. LORIG | 9/19/06 DATE | LIBERATO NAIMOLI | 9/19/06 DATE |
| DENNIS MARTIN | 9/19/06 DATE | SCOTT PAVLIS | 9/19/06 DATE |
| TIM J. SCULLY | 9/19/06 DATE | FRANK RILEY | 9/19/06 DATE |

4

AGREEMENT AND DECLARATION OF TRUST
ESTABLISHING
THE CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY
TRAINING TRUST FUND

THIS AGREEMENT AND DECLARATION OF TRUST, made and entered into as of the 1st day of June, 1986 by and between THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, A.F.L.-C.I.O., representing its affiliated Local Unions and the members thereof (the "Council") and the BUILDERS' ASSOCIATION OF CHICAGO, the UNDERGROUND CONTRACTORS ASSOCIATION, and the ILLINOIS ROAD BUILDERS' ASSOCIATION, and all other employer associations (the "Associations") who have hereto bargained or may hereafter bargain or enter into collective bargaining agreements or other agreements with the Union, its local affiliates, or with representatives of this Trust, for and on behalf of themselves and their respective members who by virtue of their said membership or otherwise are parties to collective bargaining agreements with the Union or any of its local affiliates or are parties to this Agreement or are otherwise bound to the provisions hereof as hereinafter provided, and other employers in the building and construction industry who may not be members of any association but who are included in the term "Employers" (as defined in Section 2 of ARTICLE I) and agree to be bound by this Agreement or who are otherwise so bound as provided as set forth in Section 2 of ARTICLE I;

WITNESSETH:

(1)  The Employers are parties to a collective bargaining agreement, or supplements thereto, with the Council which requires

-1-

EXHIBIT
E-5

Employer contributions of a certain sum per hour per Employee to a training fund provided in a program to be created for participating employees and established by this trust agreement.

(2) the parties have agreed that such contributions shall be payable to and be deposited in the Trust Fund created and established by this Trust Agreement.

NOW, THEREFORE, in consideration of the premises and in order to establish and provide for the maintenance of said Trust Fund to be known as "THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND" hereinafter referred to as the "Trust Fund," it is mutually understood and agreed as follows.

## ARTICLE I

### Definitions

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Trust Agreement.

### Section 1.  WRITTEN AGREEMENT

The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to this Trust together with any modification, amendment or renewals thereof, including but not limited to Collective Bargaining Agreements, memoranda of understanding which incorporate by reference Collective Bargaining Agreements or this Agreement, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Agreement.

signatory association, nor any officers, agent, employee or committee member of the Employers, or of any signatory association shall be liable to make contributions to the Fund or be under any other liability to the Fund or with respect to the Training Program, except to the extent that he may be an individual Employer required to make contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he may incur liability as a Trustee, as hereinafter provided. The liability of any individual Employer to the Fund, or with respect to the Training Program shall be limited to the payments required by any written agreement with respect to his or its individual or joint venture operations, and in no event shall he or it be liable or responsible for any portion of the contributions due from other individual Employers with respect to the operations of such Employers. The individual Employers shall not be required to make any further payments or contributions to the cost of the operations of the Fund or of the Training Program, except as provided in Section 8 of this Article.

Section 6. Neither the Employers, any signatory association, any individual Employer, the Council, nor any employee shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

Section 7. Contributions to the Fund shall be due and payable to the principal office of the Fund and shall be made in regular monthly installments except as otherwise herein provided in Section 9 of this Article II. Each contribution to the Fund shall be made promptly, and in any event on or before the 10th day

of the calendar month in which it becomes due and payable. Each monthly contribution shall include all payments which have accrued in the interim for work performed up to the close of the Employer's payroll period ending closest to the last day of the preceding calendar month. Each monthly contribution shall be accompanied by a report in a form prescribed by the Board of Trustees.

Section 8. The parties recognize and acknowledge that the regular and prompt payment of Employer contributions and reports to the Fund are essential to the maintenance of the Fund and that it would be extremely difficult, if not, impracticable, to fix the actual expense and damage to the Fund and to the Training Program which would result from the failure of an Employer to pay such monthly contributions in full within the time provided above. Therefore, if any Employer is delinquent in remitting its contributions within the time specified in Section 7 of this Article, the amount of damage to the Fund and Training Program resulting from failure to make reports or pay contributions within the time above specified shall be presumed to be the sum of ten percent (10%) of the amount of the contribution due for each delinquent report or contribution. This amount shall be added as liquidated damages upon the day immediately following the date on which the report or the contribution or contributions become delinquent. Delinquent contributions and penalties shall also bear interest at a rate up to the prime rate of interest as recog- nized by the First National Bank of Chicago or such other lawful amount as determined by the Trustees from the due date until

delinquency is totally satisfied. The Trustees, however, in their discretion, for good cause (Trustees shall have sole right to determine what shall constitute good cause) shall have the right and power to waive all or any part of any sums due the Fund as liquidated damages. Failure by any Employer to make the required payments hereunder shall be deemed a breach of the written agreement by the Employer and be subject to economic action by the Council in addition to the other remedies as provided herein. The Trustees may, at their option, also take legal action to collect all delinquent amounts owing to the Fund, and parties agree that if the delinquent account of any Employer is referred to an attorney for collection, such Employer shall immediately become liable for a reasonable sum for the attorneys' fee together with an amount equal to all costs incurred by the Trustees in commencing or prosecuting legal action in any Court. In such legal action, venue shall be laid at Cook County, Illinois, as the Fund is administered in such county.

Section 9. In the case of certain Employers who have defaulted on payments in the past, or who otherwise give the Trustees reasonable cause to feel insecure as to future contributions, the Trustees shall have the power to require a bond for the payment of contributions.

ARTICLE III

Board of Trustees

Section 1. Except as otherwise specifically provided, the Fund shall be operated and administered by a Board of Trustees whose membership shall consist of three persons appointed as trustees by the Association (known as the "Association Appointed

JDR SEWER & WATER CONSTRUCTION LLC
CASE # CHLAB-0807-1465
ACCOUNT # 33951
AUGUST 1, 2004 THROUGH AUGUST 31, 2007



**Levinson Simon & Sprung, P.C.**
Certified Public Accountants

566 W. Lake St.
Suite 3 West
Chicago, IL 60661-1414
(312) 655-0037
Fax (312) 655-9145

October 11, 2007

Trustees Laborers' Pension Fund and
Health and Welfare Department of the
Construction and General Laborers'
District Council of Chicago and Vicinity
Jean Mashos, Director
11465 Cermak Road
Westchester, Illinois 60154

Re:    JDR Sewer & Water Construction LLC
       Case # CHLAB-0807-1465(1466)
       Acct # 33951

Gentlemen:

In accordance with your instructions we have performed certain agreed upon procedures to the payroll records presented for our inspection by the above mentioned employer. The purpose of the inspection was to determine the accuracy of the employer's monthly contributions to the Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period August 1, 2004 through August 31, 2007. This agreed upon procedure engagement was performed in accordance with the standards established by the American Institute of Certified Public Accountants. The sufficiency of these procedures is solely the responsibility of the Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

Attached hereto are yearly schedules showing the detail of the under-reported hours and computation of the amounts due to the Funds. The findings consist of unreported and under-reported wages and hours of individuals on payroll doing covered work that have been previously reported to the Funds. Separate schedules and summaries have been prepared for each contract and according to the funds due.

Our examinations indicated that the employer owes the following amounts for the period audited, exclusive of interest.

|  | Amount Due |
|---|---|
| Welfare | $  4,590.40 |
| Pension | 2,873.60 |
| Training | 108.80 |
| MIAF | 11.20 |
| CISCO | 1.60 |
| CAJCA | 25.60 |
| LDCLMCC | 38.40 |
| LECET | 16.00 |
| Dues | 206.63 |
| Total | $  7,872.23 |

Trustees Laborers' Pension Fund and
Health and Welfare Department of the
Construction and General Laborers'
District Council of Chicago and Vicinity
October 11, 2007
Page Two
Case # CHLAB-0807-1465(1466)

We were not engaged to, and did not, perform an examination, the objective of which would be
the expression of an opinion on the accompanying report.  Accordingly, we do not express such
an opinion.  Had we performed additional procedures, other matters might have come to our
attention that would have been reported to you.

We shall be pleased to furnish any additional information desired and have attached our bill for
services.

Very truly yours,

LEVINSON SIMON & SPRUNG P.C.
Howard B. Levinson, CPA, MBA

HBL/lab

Enclosures

cc:    Denise Ayala

Levinson Simon & Sprung, P.C.
Reconciliation of Differences Per Year

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: ChLab-0807-1485
Audit Period: 8/1/2004 thru 8/31/2007
Fiscal Year End: May

ALL FUNDS EXCEPT LDCI,MCC, LECET AND DUES (MARBA)

| Fiscal Year Ending | MAY 2005 | Total |
|---|---|---|
| Hours Not Reported | 160.00 | 160.00 |
| **Dollar Amount Due** | | |
| Welfare Fund | 1,009.60 | 1,009.60 |
| Pension Fund | 550.40 | 550.40 |
| Training Fund | 27.20 | 27.20 |
| MIAF | 11.20 | 11.20 |
| CISCO | 1.60 | 1.60 |
| **Total** | 1,600.00 | 1,600.00 |

| | |
|---|---|
| Dues Shortages | 3.00 |
| Audit Fee | 841.25 |
| **Total Amount Due** | **2,444.25** |

Manager: Belar, Leia
Auditor: Vargas, Benjamin

Page 1

**Levinson Simon & Sprung, P.C.**
**Detail Report**
**Report Date: 10/11/2007**

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: ChLab-0807-1465
Year Ended: May, 2005
Contract: MARBA

Page 2
Employees

Contributions computed by Amount per Hour

| SSN | Name | JUN 2004 | JUL 2004 | AUG 2004 | SEP 2004 | OCT 2004 | NOV 2004 | DEC 2004 | JAN 2005 | FEB 2005 | MAR 2005 | APR 2005 | MAY 2005 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| -5234 | Corona, Jesus | | | | | | 80.00 | | | | | | | 80.00 |
| 2849 | Leyva, Amado | | | | | | 80.00 | | | | | | | 80.00 |
| | Total Hours | | | | | | 160.00 | | | | | | | 160.00 |

**Rate Table**

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | $6.3100 | | | | | | 1,009.60 | | | | | | | 1,009.60 |
| Pension Fund | $3.4400 | | | | | | 550.40 | | | | | | | 550.40 |
| Training Fund | $0.1700 | | | | | | 27.20 | | | | | | | 27.20 |
| WAF | $0.0700 | | | | | | 11.20 | | | | | | | 11.20 |
| CISCO | $0.0100 | | | | | | 1.60 | | | | | | | 1.60 |
| Total | | | | | | | 1,600.00 | | | | | | | 1,600.00 |

Levinson Simon & Sprung, P.C.
Reconciliation of Differences Per Year

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: ChLab-0807-1466
Audit Period: 8/1/2004 thru 8/31/2007
Fiscal Year End: May

ALL FUNDS - CAICA

| | MAY 2007 | Total |
|---|---|---|
| Dollars Not Reported | 7,640.00 | 7,640.00 |
| Hours Not Reported | 240.00 | 240.00 |
| Dollar Amount Due | | |
| Welfare Fund | 1,790.40 | 1,790.40 |
| Pension Fund | 1,161.60 | 1,161.60 |
| Training Fund | 40.80 | 40.80 |
| CAICA | 19.20 | 19.20 |
| LDCLMCC | 28.80 | 28.80 |
| LECET | 12.00 | 12.00 |
| Dues | 133.70 | 133.70 |
| Total | 3,186.50 | 3,186.50 |

Fiscal Year Ending

Total Amount Due    3,186.50

Manager: Beizz, Lela
Auditor: Vargas, Benjamin

Page 3

Levinson Simon & Sprung, P.C.
Detail Report
Report Date: 10/11/2007

Page 4

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: Chlab-0807-1466
Contract: CAICA
Year Ended: May, 2007

Contributions computed by Amount per Hour

Others/Unknown

| SSN | Name | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| -5234 | Corona, Jesus | | | | | | | | | | 80.00 | | | 80.00 |
| -2849 | Leyva, A | | | | | | | | | | 80.00 | | | 80.00 |
| -9101 | Ramirez, A | | | | | | | | | | 80.00 | | | 80.00 |
| | Total Hours | | | | | | | | | | 240.00 | | | 240.00 |

**Rate Table**

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | $7.4600 | | | | | | | | | | 1,790.40 | | | 1,790.40 |
| Pension Fund | $4.8400 | | | | | | | | | | 1,161.60 | | | 1,161.60 |
| Training Fund | $0.1700 | | | | | | | | | | 40.80 | | | 40.80 |
| CAICA | $0.0800 | | | | | | | | | | 19.20 | | | 19.20 |
| LDCLMCC | $0.1200 | | | | | | | | | | 28.80 | | | 28.80 |
| LECET | $0.0500 | | | | | | | | | | 12.00 | | | 12.00 |
| Total | $0.0500 | | | | | | | | | | 3,052.80 | | | 3,052.80 |

Levinson Simon & Sprung, P.C.

Detail Report

Report Date: 10/11/2007

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: ChLab-0807-1466
Contract: CAICA
Year Ended: May, 2007

Others/Unknown

Contributions computed as Percentage of Dollars Paid

| SSN | Name | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ▓▓-5234 | Corona, Jesus | | | | | | | | | | 2,512.00 | | | 2,512.00 |
| ▓▓2949 | Leyva, A | | | | | | | | | | 2,512.00 | | | 2,512.00 |
| ▓▓-8101 | Ramirez, A | | | | | | | | | | 2,616.00 | | | 2,616.00 |
| | Total Dollars Paid | | | | | | | | | | 7,640.00 | | | 7,640.00 |

| | Dues | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total | 1.7500% | | | | | | | | | | 133.70 | | | 133.70 |
| Total | | | | | | | | | | | 133.70 | | | 133.70 |

Levinson Simon & Sprung, P.C.
Reconciliation of Differences Per Year

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: ChLaB-0807-1466
Audit Period: 8/1/2004 thru 8/31/2007
Fiscal Year End: May

**ALL FUNDS EXCEPT DUES, LDCLMCC, LECET AND CAICA (CAICA)**

| Fiscal Year Ending | MAY 2007 | Total |
|---|---|---|
| Hours Not Reported | 240.00 | 240.00 |
| **Dollar Amount Due** | | |
| Welfare Fund | 1,790.40 | 1,790.40 |
| Pension Fund | 1,161.60 | 1,161.60 |
| Training Fund | 40.80 | 40.80 |
| Total | 2,992.80 | 2,992.80 |

| Total Amount Due | 2,992.80 |
|---|---|

Manager: Betar, Leila
Auditor: Vargas, Benjamin

Page 6

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: ChLab-0807-1498
Contract: CAICA
Year Ended: May, 2007

**Levinson Simon & Sprung, P.C.**
Detail Report
Report Date: 10/11/2007

Page 7
Employees

Contributions computed by Amount per Hour

| SSN | Name | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5234 | Corona, Jesus | | | | | | | | | | | | 80.00 | 80.00 |
| 2949 | Leyva, Amado | | | | | | | | | | | | 80.00 | 80.00 |
| 9101 | Ramirez, Arturo | | | | | | | | | | | | 80.00 | 80.00 |
| | Total Hours | | | | | | | | | | | | 240.00 | 240.00 |

**Rate Table**

| | |
|---|---|
| Welfare Fund | $7.4600 |
| Pension Fund | $4.8400 |
| Training Fund | $0.1700 |
| Total | |

| | MAY 2007 | Total |
|---|---|---|
| Welfare Fund | 1,790.40 | 1,790.40 |
| Pension Fund | 1,161.60 | 1,161.60 |
| Training Fund | 40.80 | 40.80 |
| Total | 2,992.80 | 2,992.80 |

Levinson Simon & Sprung, P.C.
Reconciliation of Differences Per Year

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: ChLab-0807-1466
Audit Period: 8/1/2004 thru 8/31/2007
Fiscal Year End: May

### DUES, LDCLMCC, LECET AND CAICA ONLY (CAICA)

| Fiscal Year Ending | | MAY 2008 | Total |
|---|---|---|---|
| Dollar Amount Due | Dollars Not Reported | | |
| | Hours Not Reported | | |
| | CAICA | 6.40 | 6.40 |
| | LDCLMCC | 9.60 | 9.60 |
| | LECET | 4.00 | 4.00 |
| | Dues | 72.93 | 72.93 |
| | Total | 92.93 | 92.93 |

Manager: Belar, Leia
Auditor: Vargas, Benjamin

| Total Amount Due | 92.93 |
|---|---|

Page 8

Levinson Simon & Sprung, P.C.
Detail Report
Report Date: 10/11/2007

Page 9

Subcontractors

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: ChLab-0807-1466
Contract: CAICA
Year Ended: May, 2008

Contributions computed by Amount per Hour

| SSN | Name | JUN 2007 | JUL 2007 | AUG 2007 | SEP 2007 | OCT 2007 | NOV 2007 | DEC 2007 | JAN 2008 | FEB 2008 | MAR 2008 | APR 2008 | MAY 2008 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5234 | Corona, J | | 40.00 | | | | | | | | | | | 40.00 |
| 2949 | Leyva, A | | 40.00 | | | | | | | | | | | 40.00 |
| | Total Hours | | 80.00 | | | | | | | | | | | 80.00 |

Rate Table

| | | | JUL 2007 | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CAICA | $0.0800 | | 6.40 | | | | | | | | | | | 6.40 |
| LOCMCC | $0.1200 | | 9.60 | | | | | | | | | | | 9.60 |
| LECRT | $0.0500 | | 4.00 | | | | | | | | | | | 4.00 |
| Total | | | 20.00 | | | | | | | | | | | 20.00 |

# Levinson Simon & Sprung, P.C.
## Detail Report
### Report Date: 10/11/2007

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
JDR SEWER & WATER CONSTRUCTION LLC
Case #: ChLab-0807-1466
Contact: CAICA
Year Ended: May, 2008

Page 10

Subcontractors

Contributions computed as Percentage of Dollars Paid

| SSN | Name | JUN 2007 | JUL 2007 | AUG 2007 | SEP 2007 | OCT 2007 | NOV 2007 | DEC 2007 | JAN 2008 | FEB 2008 | MAR 2008 | APR 2008 | MAY 2008 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5234 | Corona, J | | 1,326.00 | | | | | | | | | | | 1,326.00 |
| 2949 | Leyva, A | | 1,326.00 | | | | | | | | | | | 1,326.00 |
| | Total Dollars Paid | | 2,652.00 | | | | | | | | | | | 2,652.00 |
| | 2.7500% | | | | | | | | | | | | | |
| | Total | | 72.93 | | | | | | | | | | | 72.93 |
| Due Total | | | 72.93 | | | | | | | | | | | 72.93 |

## Levinson Simon & Sprung P.C.
## Payroll Audit Information Sheet

Page 1

| | | | |
|---|---|---|---|
| EMPLOYER'S NAME | JDB sewer & water | EMPLOYER # | 033951 |
| ADDRESS | 672 E. Irving pk Rd Roselle IL | PHONE # | 630-606-2720 |
| CITY STATE ZIP | Roselle IL 60172    suit 109 | FAX # | |
| EMAIL ADDRESS | | FEIN | 770603396 |
| DATE OF CONTRACT | | AUDIT PERIOD | 8-1-04 to 8-31-07 |
| CONTACT'S NAME | | TITLE | member |
| PERSON FUND IS TO CONTACT | Dominic Giannini | TITLE | |
| ENTITY TYPE | Dominic Giannini | # OF EMPLOYEES | 6 16 |
| | LLC | AVE # PER MONTH | 3 |
| BUSINESS ACTIVITY | Install  sewer & water mains | | |

| OWNERSHIP PRINCIPALS | TITLE | % | ADDRESS |
|---|---|---|---|
| Annita Caputo | LTD Ptnr | 50 | |
| Dominic Giannini | Member | 50 | 725 washington St Roselle IL 60172 |

BANKING FACILITIES USED AND ACCOUNT NUMBER    Parkway  330895

IS EMPLOYER STILL IN BUSINESS?    ☒ YES    ☐ NO

DOES EMPLOYER HAVE INTEREST IN OTHER RELATED OPERATIONS?    ☐ YES    ☒ NO

IF YES, LIST NAMES OF SAME

IS EMPLOYER A MEMBER OF ANY TRADE ORGANIZATION/ASSOCIATION?    ☐ YES    ☒ NO

IF YES, LIST NAMES OF SAME

# LABORERS' PENSION & WELFARE FUNDS

6/30/2008

AUDIT  8-1-04-8-31-07

EMPLOYER  J D R SEWER & WATER CONSTRUCTION LLC  CODE 33951

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.

| ADDITIONAL HOURS | HOURS | WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDC:LMCC | RATE | MIAF | RATE | CAICA | RATE | LECET | RATE | CISCO | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6-04-4-31-05 | 160.00 | 1,009.60 | 6.31 | 550.40 | 3.44 | 27.20 | 0.17 | | | | | | | | | | | | 1,600.00 |
| 6-06-5-31-07 | 240.00 | 1,790.40 | 7.46 | 1,161.60 | 4.84 | 40.80 | 0.17 | 133.70 | 28.80 | 0.12 | 11.20 | 0.07 | 19.20 | 0.08 | 12.00 | 0.05 | 1.60 | 0.01 | 3,186.50 |
| 6-1-07-8-31-07 | 240.00 | 1,790.40 | 7.46 | 1,161.60 | 4.84 | 40.80 | 0.17 | | | | | | | | | | | | 2,592.80 |
| MEN NOT REPORTED | 80.00 | | | | | | | 72.93 | 9.60 | 0.12 | | | 6.40 | 0.08 | 4.00 | 0.05 | | | 92.93 |
| SUBTOTAL | 720.00 | 4,590.40 | | 2,873.60 | | 108.80 | | 206.63 | 38.40 | | 11.20 | | 25.60 | | 16.00 | | 1.60 | | 7,872.23 |
| 10% PENALTIES | | 459.04 | | 287.36 | | 10.80 | | 20.66 | 3.84 | | | | 2.56 | | 1.50 | | 0.06 | | 776.24 |
| 20% PENALTIES | | | | | | | | | | | | | | | | | | | |
| AUDIT COSTS | | 420.63 | | 420.62 | | | | | | | | | | | | | | | 841.25 |
| DUES-SHORTAGES | | | | | | | | 3.00 | | | | | | | | | | | 3.00 |
| ACCUM. 10% PENALTIES | | | | | | | | | | | | | | | | | | | |
| ACCUM. INTEREST | | 1,018.33 | | 636.62 | | 24.14 | | | 8.77 | | 2.60 | | 5.83 | | 3.66 | | 0.36 | | 1,700.31 |
| TOTAL DUE | | 6,488.40 | | 4,218.20 | | 143.74 | | 230.29 | 51.01 | | 14.92 | | 33.99 | | 21.26 | | 2.02 | | 11,193.03 |

EXHIBIT E-7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
                        Plaintiffs, )      Case No.  08 C 2516
     v. )
                   )      Judge GOTTSCHALL
JDR SEWER AND WATER CONSTRUCTION, )
LLC, an involuntarily dissolved Illinois limited )
liability company - member managed, and )
DOMINIC M. GIANNINI, JR., individually, )
and ANNITA L. CAPUTO, individually, )
                    Defendants. )

## DECLARATION OF JERROD OLSZEWSKI

I, JERROD OLSZEWSKI, declare and state as follows:

1.     I am Funds Counsel for Plaintiffs Laborers' Pension Fund and Laborers'

Welfare Fund of the Health and Welfare Department of the Construction and General

Laborers' District Council of Chicago and Vicinity (the "Funds"), Plaintiffs in the above-

referenced action.  This Declaration is submitted in support of the Funds' Motion for

Judgment in Sum Certain against Defendant Bolton Corporation, Inc.

2.     Shareholders of the law firms of Allison, Slutsky & Kennedy, and the Law

Offices of Marc Pekay, out-of-house collection counsel for the Laborers' Funds, bill the

Laborers' Funds at a rate of $175.00 per hour.  Affiant, as in-house counsel for the Funds

has first-hand knowledge that the hourly rate of $175.00 has been found reasonable and

has been awarded by many courts in collection proceedings.



3.    I received a Bachelor of Arts Degree from Benedictine University in 1993 and a Juris Doctor Degree from the John Marshall Law School in 2002.  I was admitted to the bar of the State of Illinois in May, 2002, and to the bar of the United States District Court for the Northern District of Illinois in May, 2002.  From May, 2002 to December, 2004, I practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson, former out-of-house counsel to the Laborers' Funds, with the majority of my work being spent representing the Laborers' Funds.  In December, 2004, I became in-house counsel for the Funds.

4.    Based on the foregoing, $175.00 represents a fair and reasonable market rate for my in-house legal services to the Funds in this matter.

5.    Exhibit F-1 attached hereto sets forth the time expended to date by in-house counsel on this matter.  As set forth in that Exhibit, we have expended 6.5 hours totaling $1,137.50 in attorneys' fees and $574.20 in costs totaling $1,711.70.

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.

Date: _6/30/08_                                     _____
                                                   Jerrod Olszewski

2

Laborers Pension and Welfare Funds
11465 Cermak Rd.
Westchester, IL  60154


Invoice submitted to:
Dominic Jr. 2




June 30, 2008


Invoice #10001


Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 4/30/2008 JO | Review of file and requests for lawsuit; Telephone conference with J. Fosco re: lawsuit status; Telephone conferences (2) with M. Christopher re: lawsuit status; drafted Complaint; corporate searches; defendant searches. | 2.20 175.00/hr | 385.00 |
| 5/1/2008 JO | Drafted Complaint and organized exhibits. | 1.30 175.00/hr | 227.50 |
| 5/14/2008 JO | Conference with J. Fosco and M. Christopher re: status | 0.20 175.00/hr | 35.00 |
| 5/28/2008 JO | Telephone conference with  Defendant Gianni re: payment , memo to file | 0.30 175.00/hr | 52.50 |
| 6/23/2008 JO | Reviewed file | 0.10 175.00/hr | 17.50 |
| 6/27/2008 JO | Drafted Motion for Entry of Default Judgment, affidavit of Jim Fosco, affidavit of Mike Christopher, declaration of atty fees, order | 1.50 175.00/hr | 262.50 |
| 6/30/2008 JO | Edited Motion for Entry of Default Judgment, Jim Fosco's affidavit, M. Christopher'a affidavit, atty dec, order, Telephone conference with  M. Christopher re: interest calculation | 0.90 175.00/hr | 157.50 |
| | For professional services rendered | 6.50 | $1,137.50 |


EXHIBIT
F-1

Dominic Jr. 2                                                                                    Page     2

Additional Charges :

|  |  | Amount |
|---|---|---|
| 4/9/2008 | Fed. Ex. to D. Caputo. | 18.42 |
|  | Fed. Ex. to D. Giannini. | 21.18 |
| 5/2/2008 | Photocopies of Complaint, etc. | 9.60 |
|  | Filing fee. | 350.00 |
| 5/10/2008 | JAS service of summons and complaint on all 3 Defendants | 175.00 |
|  | Total additional charges | $574.20 |
|  | Total amount of this bill | $1,711.70 |
|  | Balance due | $1,711.70 |

### Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Jerrod Olszewski | 6.50 | 175.00 | $1,137.50 |

## CERTIFICATE OF SERVICE

The undersigned attorney of record certifies that he caused a copy of the foregoing Motion for Entry of Default Judgment in Sum Certain to be sent by First Class U.S. Mail, postage prepaid, to the address listed below on June 30, 2008.

Dominic M. Giannini, Jr.          Annita L. Caputo
725 Washington Court              134 E. Brookfield Avenue
Roselle, IL  60172                Mount Prospect, IL  60056

JDR Sewer and Water Construction, LLC
c/o Dominic M. Giannini, Jr., Managing Member
725 Washington Court
Roselle, IL  60172

/s/ Jerrod Olszewski

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and<br>LABORERS' WELFARE FUND OF THE<br>HEALTH AND WELFARE DEPARTMENT<br>OF THE CONSTRUCTION AND GENERAL<br>LABORERS' DISTRICT COUNCIL OF<br>CHICAGO AND VICINITY, and JAMES S.<br>JORGENSEN, Administrator of the Funds,<br>　　　　　　　　　　Plaintiffs,<br>　　　v.<br><br>JDR SEWER AND WATER CONSTRUCTION,<br>LLC, an involuntarily dissolved Illinois limited<br>liability company - member managed, and<br>DOMINIC M. GIANNINI, JR., individually,<br>and ANNITA L. CAPUTO, individually,<br>　　　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  08 C 2516<br><br>Judge GOTTSCHALL |

### JUDGMENT ORDER

This matter having come to be heard on the Motion of Plaintiffs Laborers'

Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the

Construction and General Laborers' District Council of Chicago and Vicinity, and James

S. Jorgensen, Administrator of the Funds, for an Entry of Default Judgment in Sum

Certain against Defendants JDR Sewer and Water Construction, LLC, an involuntarily

dissolved Illinois limited liability company – member managed, (hereinafter "JDR"), and

Dominic M. Giannini Jr., individually, (hereinafter "Giannini"), and Annita L. Caputo,

individually (hereinafter "Caputo"), due notice having been given, and the Court being

fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1.　　　Default judgment is hereby entered in favor of the Plaintiffs and against

Defendants JDR, Giannini, and Caputo, joint and severally, in the amount of $26,404.73

as follows:

A.    For $13,500.00 representing unpaid Note payments and liquidated damages for the Note dated August 26, 2004;

B.    For $11,193.03 representing delinquent benefits and dues contributions, liquidated damages, interest, and audit costs revealed by the audit for the time period of August 1, 2004 through August 31, 2007;

C.    For $1,711.70 representing attorneys' fees and costs; and

2.    Defendant is to pay post-judgment interest on all amounts set forth herein until they are paid to the Funds.

ENTER:

_____
The Honorable Joan B. Gottschall
United States District Court Judge

Dated:_____